In re MAILEY.
Patent Appeal No. 3099.

Court of Customs and Patent Appeals.
April 24, 1933.

Frederick Transom, of Washington, D. C.
(Thos. H. Brown, of Washington, D. C., of
counsel), for appellant.

T. A. Hostetler, of Washington, D. C.
(Howard S. Miller, of Washington, D. C., of
counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and
BLAND, HATFIELD, GARRETT, and
LENROOT, Associate Judges.

BLAND, Associate Judge.

On appeal from the decision of the Ex-
aminer, the Board of Appeals of the United
States Patent Office affirmed the Examin-
er's rejection of all the claims in the applica-
tion numbered 1 to 21, inclusive. From the
decision of the Board, appeal is taken to this
court.

Claims 1, 3, 5, 6, 7, 13, 14, and 21 were
regarded as illustrative by the Board, and
we shall so regard them, and they follow:

"1. In combination with a reaction cham-
ber having a wall transparent to actinic light,
a source of light rich in ultra violet rays sit-
uated outside said reaction chamber and
within a selective atmosphere permeable to a
preponderance of light of desired wave
lengths and absorbent to a preponderance of
undesired wave lengths.

"3. In combination with a reaction cham-
ber having a wall transparent to actinic light,
a source of light rich in ultra violet rays sit-
uated outside said reaction chamber and
within a selective fluid screen permeable to a
preponderance of light of desired wave
lengths and absorbent to a preponderance of
undesired wave lengths.

"5. In combination, an annular reaction
chamber having an inner wall transparent to
ultra violet light, an inner chamber bound-
ed by said wall, a source of light in said in-
ner chamber rich in ultra violet rays, a selec-
tive atmosphere permeable to a preponder-
ance of light of desired wave-lengths and ab-
sorbent to a preponderance of undesired
wave lengths, and means for circulating said
atmosphere through said chamber.

"6. In the process of producing or ac-
celerating chemical reactions by subjecting
the reaction substances to ultra violet light
the method of producing the reaction which
consists in passing between the reaction sub-
stances and the source of the ultra violet
light a gas beneficial to the influence of the
ultra violet light on the reaction.

"7. In photo-chemistry the method of se-
lecting light of desired wave lengths which
consists in passing light from a given source
through a gaseous screen which is opaque to
all wave lengths from said source except the
desired wave lengths.

"13. That process for differentially af-
fecting substances by means of rays of light
which consists in treating said substances
with light from which has been filtered those

rays which affect the portions of said substances which are not to be treated, thus confining the action of those portions which it is desired to treat.

"14. That process for killing bacteria in chemical compounds which will be affected deleteriously by heat and unscreened ultraviolet light, which consists in treating the compounds with light from which has been filtered that portion which affects the chemical compounds, leaving that portion which kills the bacteria.

"21. That process for treating substances with light rays, which consists in selecting the critical spectral band which reacts upon said substance, and confining the light treatment to said critical band."

The references relied upon are: Kliegl, 708,365, September 2, 1902; Voigt, 908,051, December 29, 1908; Keyes, 1,198,356, September 12, 1916; Snelling, 1,325,214, December 16, 1919; Snelling, 1,365,740, January 18, 1921; Johnson (Br.) 21,252 of 1900; Page 403, "Spectroscopy," by Baly (1905).

The invention relates to a method and apparatus for carrying out chemical reactions under the influence of actinic light. The apparatus and process disclosed relates to photochemistry in which use is made of ether wave energy, including both visible and invisible rays in affecting, assisting, effecting, or accelerating chemical actions. Microbes and bacteria are destroyed in a given material, organic or inorganic, by screening, regulating, or controlling the rays of light which are generated by applicant usually with a mercury vapor arc light having an envelope of fused silica or fused fluorite. Certain dangerous and harmful rays are screened out from the whole body of rays as they emanate from the generating source. The ones suited for the purpose intended are permitted to pass through the screen and are used to bring about the result desired. The light from the mercury lamp is compared to the light of the sun, and the rays which are of importance in applicant's claimed invention, and which will pass through the fused silica or fused fluorite envelope are ultra-violet rays, including the far ultra-violet light rays.

Appellant's disclosure of the apparatus shows a mercury vapor lamp which is suspended within a circular tube made from fused silica or fused fluorite, and which is transparent to ultra-violet waves. The fused tube is closed at both ends and is equipped with suitable conduits so as to provide for the regulative control and circulation of atmosphere, gas, fluid, or other suitable screening medium. Different mediums forming the screen are permeable to different wave lengths or light rays and permit the passage of a preponderance of certain lengths, and at the same time are absorbent to other undesired wave lengths. Surrounding appellant's fused screen-containing tube is a chamber provided with outlet and inlet so as to permit circulation of the material to be subjected to the actinic rays.

Claims 1 to 5, inclusive, and 12 were rejected on either of the patents to Snelling. They were also rejected on either of the patents to Kliegl and Johnson, and particularly in view of any one of the patents to Snelling or the patent to Voigt.

It seems to us that Snelling, 1,325,214, shows everything disclosed by applicant except, first, the fused quartz or fused fluorite material used for permitting the passage of the ultra-violet rays; second, Snelling does not show apparatus for circulating the gases or screening medium in the chamber between the arc lamp and the quartz envelope in the manner or to the extent as is shown by applicant. Snelling's second patent, No. 1,365,740, does specify that the dome or envelope may be "of glass, quartz, or other material that is pervious to the actinic rays employed." Snelling in both patents shows a space adjacent to the lamp which is filled with air.

The patent to Kliegl relates to an electromedical appliance for treating parts of the body by actinic rays from an arc lamp in a casing. A so-called cell or chamber is interposed for intercepting heat rays, acting as a filter. The cell is filled with water in which any agent may be dissolved, and the same is so arranged that the water may be circulated through the cell.

Voigt shows the use of light rays for promoting the desired reaction and uses a mercury vapor lamp in a transparent cylinder.

The British patent to Johnson relates to the means of eliminating and retarding electric and other rays for surgical, medical, and other purposes in which rays from an X-ray tube are passed through a light filter of celluloid or other material arranged to hold a solid, liquid, or gas, used for filtering out rays detrimental to the material to be treated.

Page 403 of "Spectroscopy" by Baly (1905) discusses absorption spectra and shows that it is well known that light is selectively absorbed by different gases.

Concerning the process claims, the Board said: "Claims 6 and 11 are directed to the process but are corresponding to applicant's specification of very broad scope. They are little more than the conception of utilizing selected catalytic rays to produce a reaction. Applicant admits that it is known that certain rays are more active in producing a particular reaction than others. It is our opinion that this being known, it involves no patentable novelty broadly stated, to select by means of a screen any particular rays desired. This is shown to be possible by each of Baly, Johnson and Kliegl. Claim 6 requires that the gas screen be not only a screen but that it be actively beneficial apparently to the rays which pass through the screen. No examples of this are given in the specification and it is indefinite just what screen would be beneficial to any particular light. If this clause is considered to mean only that the screen allows a desired predetermined frequency or grade of radiation to pass, then the claim presents no novelty over the rejection stated in the preceding clause above. It is noted that claims 7 and 11 do not include the active steps of subjecting the reagents to be reacted to the radiant energy but only in the single step of selecting waves of desired length by passing the radiations through a screen. In this sense these claims are met by Baly where some of the wave lengths would be stopped by and others would pass through the screen. However, these claims if as regarded as being limited in this art by reference to photo-chemistry the conclusions stated above as to the rejection on the references applies."

The Examiner rejected claims 6 to 11, inclusive, on Snelling in view of the Baly reference. The Board has affirmed the rejection of these claims.

Claims 13 to 21, inclusive, were, by the applicant, copied from the patent to Sperti, No. 1,676,579, of July 10, 1928, for the purpose of an interference. They were rejected by the Board for the reasons which are fully explained in the following quotation, and which need not be repeated here:

"Claims 13 to 21 have been copied from the patent to Sperti for the purpose of interference. Claims 14, 15, 16, 17, 18 and 19 of the group are specifically limited to killing bacteria in solutions and in solutions containing other constituents which it is not desired to effect. There is no suggestion in applicant's case that any distinction was appreciated by the various wave lengths of radiant energy for selectively killing bacteria. This is altogether a new conception in applicant's case and involves new matter therein. Clearly applicant is not entitled to make claims 14 to 19, inclusive. Claims 13, 20 and 21 have been rejected on the ground that if construed broadly enough so as to go beyond the disclosure of Sperti and broad enough so that applicant can make them that they are not patentable over the state of the art. Claim 21 is found to be substantially of the scope of those made by applicant. We consider claim 21 to be unallowable over the state of the art and it is rejected in accordance with the rejection applied by the examiner under the provisions of Rule 95.

"Claims 13 and 20 are directed to "differentially affecting substances." We believe these claims are limited to Sperti's disclosure in distinction to a broader disclosure such as applicant's for the reason that Sperti does differentially affect a plurality of substances in a mixture. That is, he kills bacteria while avoiding modifying enzymes all contained in the same solution. Applicant's disclosure on the contrary is intended to produce a reaction between all of the reagents in the charge. It is not intended differentially to cause a reaction in one or between two or more of the reagents while avoiding reaction between others of these present. So far as disclosed, applicant would have only one or two agents present. We hold that applicant is not entitled to make this limitation referring to differentially affecting substances. It would not have the same meaning in his application as that of Sperti's. Claims 13, 20 and 21 are therefore held not allowable to applicant."

Appellant's able counsel has shown great familiarity with this highly technical subject and has been of great help to the court in its effort to get a reasonable understanding of the subject-matter involved in this appeal. Most of appellant's argument, however, was devoted to a discussion of the broader claims, which, we think, cover subject-matter old in the art.

One phase of appellant's presentation has particularly arrested our attention. He urges that with appellant's apparatus and method he can accomplish that which the prior art could not and did not accomplish. Attention is called to the fact that scientists attribute the abrupt ending of the solar spectrum at about 2800 Angstrom units to the absorption by the ozone in the very high layers of the atmosphere, and that the existence of the ozone is due to "the action of the short wave-lengths of the ultra-violet of sunlight on oxygen." See Lethal Action of Ultra-Violet Light [etc.], Smithsonian Miscellaneous Collections, Volume 87, No. 10.

Appellant points out that his screening medium may consist of "such gases, or mixtures of gases as air, oxygen, ozone, chlorine, bromine, water vapor, and various mixtures of these [etc.]," and that his device provides definitely for the circulation of these screening mediums, which, therefore, includes the circulation of air. He contends that the prior art did not show the circulation of air when used as a screening medium, and that if the air was not circulated, the ultra-violet rays from the arc lamp would rapidly ozonize the air and thus make it opaque to the desired actinic rays. It is therefore argued, in effect, that as far as the use of the atmosphere as a screening medium is concerned, appellant's invention makes the use of air possible where, in the prior art, the use of uncirculated air would be wholly inefficacious.

The solicitor for the Patent Office points out that Snelling shows the use of air as a screening medium and that the chamber where the air or atmosphere acts as a screen is open at the bottom; that it is old in the art, as is shown by Kliegl, to circulate the screening medium. Appellant makes no contention that he is the first discoverer of the fact that ultra violet rays ozonize the air and thus render the air opaque to such rays. The board mentions the air space in Snelling and says: " * * * Set forth as a structure therefore applicant's device as defined by the apparatus claims is anticipated. As apparatus, these claims further involve no patentable novelty over the disclosure of Snelling taken with the disclosure of Kliegl or Johnson."

We find ourselves in disagreement with the Board as to claims 4 and 5, which are drawn to cover a selective atmosphere as a screening medium and a means for circulating the atmosphere through the chamber. The circulation of the colored water in Kliegl carried off heat. The prior art showed no teaching of the advisability or necessity of circulating the atmosphere to prevent it from ozonizing. A problem was presented in connection with the use of atmosphere as a screening medium which was not solved in the prior art. Since the circulation of the air made possible its use as a screening medium, we cannot say that the production of appellant's device did not involve invention. On the contrary we think a new, useful, and unobvious result, in the respect indicated, flowed from appellant's activities, and that claims 4 and 5, covering the patentable features of the applicant's application, should have been allowed.

Except as to claims 4 and 5 we agree with the decision of the Board in the rejection of all the claims in the application and with the reasons assigned for such rejection.

The decision of the Board is, therefore, modified. It is reversed as to claims 4 and 5, and in all other respects affirmed.